COLUMBIA LEGAL SERVICES
Hank Balson, WSBA #29250
Atieno Odhiambo, WSBA #30280
Patricia J. Arthur, WSBA #13769
101 Yesler Way, Suite 301
Seattle, WA 98104
(206) 464-0838

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

OCT 21 2003

JAMES R. LARSEN, CLERK
_____DEPUTY
SPOKANE, WASHINGTON

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| J.Z., a minor, by and through DAVID GROESBECK, the proposed guardian ad litem, and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>NGUYEN VAN HANH, Ph.D., in his official capacity as Director of the United States Office of Refugee Resettlement,<br><br>Defendant. | CS-03-0378-FVS<br><br>No.<br><br>COMPLAINT<br><br>CLASS ACTION |

## INTRODUCTION

1.   This class action seeks declaratory and injunctive relief against the director of the Office of Refugee Resettlement (ORR), within the United States Department of Health and Human Services, for failing to provide the Plaintiff, and

COMPLAINT — Page 1

Columbia Legal Services
Institutions Project
101 Yesler Way, Suite 301
Seattle, WA 98104
(206) 464-0838

other similarly situated juvenile immigration detainees, with services necessary to address the youth's mental health needs, thereby placing the youth at risk for significant harm, including suicide.

## JURISDICTION & VENUE

2. This Court has jurisdiction under 28 U.S.C. § 1331.

3. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b)(2), 1391(e)(2), and 1391(e)(3).

## PARTIES

4. Plaintiff J.Z. is 17 years old. He is a real party in interest in this case. He is currently confined at Martin Hall, a privately-run juvenile detention facility near Spokane, Washington, which houses juvenile immigration detainees pursuant to a contract with the United States government.

5. David Groesbeck is J.Z.'s proposed guardian ad litem. Mr. Groesbeck is an attorney admitted to practice before this Court, as required by LR 17.1(a).

6. Defendant Nguyen Van Hanh, Ph.D., is the director of the Office of Refugee Resettlement, within the Administration for Children & Families, a division of the U.S. Department of Health and Human Services in Washington, D.C. He is responsible for ensuring that ORR fulfills the duties assigned to that office under the law.

COMPLAINT – Page 2

Columbia Legal Services
Institutions Project
101 Yesler Way, Suite 301
Seattle, WA 98104
(206) 464-0838

# FACTS

## General Facts

7.  A child under 18 who has no lawful immigration status in the U.S., with no parent or legal guardian in the U.S. available to provide the child with care and physical custody, is known as an "unaccompanied alien child" (also referred to as an "unaccompanied undocumented child"). 6 U.S.C. § 279(g)(2). Pursuant to the Homeland Security Act of 2002, responsibility for the placement and care of such children was transferred from the former Department of Immigration and Naturalization Services to the Office of Refugee Resettlement, effective March 1, 2003. 6 U.S.C. § 279.

8.  Unaccompanied undocumented children may, in some circumstances, be held in a detention facility, pending the outcome of their immigration proceedings.

9.  Martin Hall is a privately-run, secure juvenile detention facility near Spokane, Washington. It houses both unaccompanied undocumented children, as well as juveniles facing criminal charges or adjudicated delinquent, pursuant to contracts with the federal government and various counties in eastern Washington.

10. Some portion of the unaccompanied undocumented children detained in Washington have mental health needs that require attention from qualified

COMPLAINT – Page 3

Columbia Legal Services
Institutions Project
101 Yesler Way, Suite 301
Seattle, WA 98104
(206) 464-0838

mental health professionals. Many have fled countries where they faced abandonment, torture, abuse, or other atrocities.

11.   ORR does not ensure that qualified professionals conduct meaningful mental health screenings and suicide assessments on youth upon their arrival in detention.

12.   To the extent that youth receive mental health screenings and suicide assessments upon their arrival in detention, ORR does not ensure that these screenings and assessments lead to appropriate referrals and the provision of necessary mental health services.

13.   ORR does not ensure that an adequate number of qualified staff members are available to deal directly with juveniles who have severe mental health problems. See INS Juvenile Protocol Manual; Juvenile Detention and Shelter Care Program, § 5, standard 3-JDF-4C-16 (1999).

14.   ORR does not ensure that written, individual treatment plans are developed by a qualified mental health practitioner for each juvenile requiring close supervision. See INS Juvenile Protocol Manual; Juvenile Detention and Shelter Care Program, § 5, standard 3-JDF-4C-30 (1999).

15.   ORR does not ensure that mental health, psychiatric, and crisis intervention services are available to unaccompanied undocumented children in

Columbia Legal Services
Institutions Project
101 Yesler Way, Suite 301
Seattle, WA 98104
(206) 464-0838

detention on an as-needed basis. See INS Juvenile Protocol Manual; Juvenile Detention and Shelter Care Program, § 5, standard 3-JDF-5B-05.

16. Upon information and belief, it is Martin Hall's practice to notify ORR about any significant event affecting an unaccompanied undocumented child in its custody.

17. Upon information and belief, ORR receives copies of all records created by Martin Hall pertaining to unaccompanied undocumented youth detained in that facility.

18. Several unaccompanied undocumented children have attempted suicide while in detention at Martin Hall. In most cases, these youth were placed in isolation, on "suicide watch," but the federal officials responsible for their care did not provide the youth with intervention or treatment from qualified mental health professionals.

19. The Defendant knew, or should have known, about the lack of mental health services for juvenile immigration detainees in Washington at the time, or shortly after, he was assigned responsibility for the placement and care of these youth. However, he has not taken the necessary steps to ensure that these youth routinely receive necessary mental health services.

COMPLAINT – Page 5

Columbia Legal Services
Institutions Project
101 Yesler Way, Suite 301
Seattle, WA 98104
(206) 464-0838

Facts about Named Plaintiff

20. J.Z. is a 17-year-old Mexican national, seeking asylum and Special Immigrant Juvenile Status in the United States.

21. J.Z. fled to the United States when he was 14 in order to escape severe physical abuse by family members.

22. J.Z. was arrested in the U.S. and detained at Martin Hall on June 16, 2003. He remains confined at Martin Hall pending resolution of his immigration claims.

23. Shortly after his admission to Martin Hall, J.Z. responded to a mental health questionnaire, noting that he was sad and depressed, that he was thinking about killing himself, and that he needed help to keep from killing himself while he was in detention. In response to J.Z.'s answers on the questionnaire, the screener recommended "special housing placement," but declined to refer J.Z. to a mental health professional.

24. The day after J.Z. completed the mental health questionnaire, a CDMHP (County-Designated Mental Health Professional) met with the youth to assess whether he was at imminent risk of harm. Although the CDMHP concluded that J.Z. "[did] not appear to be at imminent risk toward self or others," she noted that he "would not confirm or deny thoughts of suicide" and that he "endorsed thoughts of depression."

COMPLAINT – Page 6

Columbia Legal Services
Institutions Project
101 Yesler Way, Suite 301
Seattle, WA 98104
(206) 464-0838

25. Upon information and belief, ORR received a copy of J.Z.'s completed mental health questionnaire and CDMHP report, but failed to provide him with necessary mental health services to address his needs.

26. J.Z. tried to commit suicide twice in July, 2003, while confined at Martin Hall.

27. During the first week of July, 2003, J.Z. tried to choke himself by tying his sheets around his throat. Martin Hall staff place him in isolation, on suicide watch.

28. On July 18, 2003, J.Z. attempted suicide by tying one end of a bed sheet to his neck and the other end to his cell door. He pulled on the sheet in an attempt to choke himself. Martin Hall staff placed him in isolation, on suicide watch.

29. Martin Hall contacted ORR shortly after J.Z.'s first suicide attempt. In addition, J.Z.'s pro bono immigration attorney spoke with ORR about the suicide attempt. The ORR representative informed J.Z.'s counsel that they would look into getting a counselor to see J.Z. on a regular basis. When ORR failed to provide the necessary mental health services, J.Z.'s immigration attorney arranged for a psychological evaluation to address J.Z.'s urgent mental health needs.

30. The psychologist who evaluated J.Z. at the request of his immigration attorney diagnosed J.Z. with Major Depressive Disorder, Recurrent, Severe with

COMPLAINT -- Page 7

Columbia Legal Services
Institutions Project
101 Yesler Way, Suite 301
Seattle, WA 98104
(206) 464-0838

Psychotic Features, as well as Posttraumatic Stress Disorder. She recommended therapy and further assessment for psychotropic medications.

31. After the first psychological evaluation, arranged by J.Z.'s immigration attorney, another psychologist, approved and paid for by ORR, evaluated J.Z. and diagnosed him provisionally with Adjustment Disorder with Depressed and Anxious Mood, with Oppositional-Defiant behavior traits, as well as Posttraumatic Stress Disorder, Delayed Onset. This psychologist recommended that J.Z. be prescribed psychotropic medications and stated that J.Z. was "in dire need of an individual counselor."

32. Despite two suicide attempts and recommendations from two psychologists, ORR still has not provided J.Z. with professional mental health treatment. In fact, J.Z. did not meet with a psychiatrist until October 7, 2003, almost four months after ORR became aware that he was suicidal.

Facts Pertaining to Other Unaccompanied Undocumented Children Detained at Martin Hall

33. Dylan McNiffe is a 16-year-old boy who was detained at Martin Hall beginning in December, 2002.

34. Martin Hall staff were aware that Dylan had a history of physical and sexual abuse, but did not provide him with mental health services.

COMPLAINT – Page 8

Columbia Legal Services
Institutions Project
101 Yesler Way, Suite 301
Seattle, WA 98104
(206) 464-0838

35. In March, 2003, Dylan had an episode where he became upset and started throwing things. Martin Hall staff restrained him and placed him in a padded cell overnight. Dylan was then placed in IMU, on suicide watch, for four days. However, ORR did not arrange for Dylan to receive mental health services during that time.

36. Chris Chen was detained at Martin Hall for six months, beginning in July, 2002. He was 15 years old at the time.

37. In October, 2002, Chris got very depressed and made himself pass out by holding his breath and choking himself. He was placed in the IMU on suicide watch for one day, but did not receive any mental health services.

## CLASS ACTION ALLEGATIONS

38. J.Z. brings this action on behalf of himself, and all others who are similarly situated, pursuant to Fed. R. Civ. P. 23(a) and 23(b)(2). The Plaintiff provisionally proposes the following class definition:

> All youth, under 18, who currently are, or in the future may be, confined at a detention facility in Washington State, under the jurisdiction of the U.S. Department of Homeland Security and/or the U.S. Department of Health and Human Services, who have mental health needs.

39. This is an appropriate class action because the proposed class is so numerous that joinder of all members is impracticable.

COMPLAINT – Page 9

Columbia Legal Services
Institutions Project
101 Yesler Way, Suite 301
Seattle, WA 98104
(206) 464-0838

40. There are questions of law and fact common to the class, including whether the Defendant's failure to provide adequate mental health services to juvenile immigration detainees with mental health needs violates the youth's rights under the Fifth Amendment to the U.S. Constitution.

41. The claims of the named Plaintiff are typical of the claims of the class.

42. The named Plaintiff will fairly and adequately protect the interests of the class.

43. The named Plaintiff has available competent counsel with experience in civil rights, prisoners' rights, and immigration law who are willing and able to protect the interests of the class.

44. The Defendant has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final declaratory and injunctive relief with respect to the class as a whole.

## CAUSES OF ACTION

45. The Defendant's failure to ensure that unaccompanied undocumented children in detention in Washington State receive adequate mental health screenings and suicide assessments, as well as necessary mental health interventions and treatment, violates his duties under section 462 of the Homeland Security Act of 2002, 6 U.S.C. § 279, actionable under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971).

Columbia Legal Services
Institutions Project
101 Yesler Way, Suite 301
Seattle, WA 98104
(206) 464-0838

46. The Defendant's failure to ensure that unaccompanied undocumented children in detention in Washington State receive adequate mental health screenings and suicide assessments, as well as necessary mental health interventions and treatment, violates his duties under the Fifth Amendment to the U.S. Constitution, actionable under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971).

47. The Defendant's failure to ensure that unaccompanied undocumented children detained in Washington receive regular counseling and appropriate mental health interventions when necessary violates the Plaintiffs' rights under the Stipulated Settlement Agreement in Flores v. Meese, No. CV 85-4544-RJK(Px) (C.D. Cal. March 23, 1993) (stipulated settlement agreement).

## REQUESTS FOR RELIEF

The Plaintiff asks this Court to grant the following relief:

48. Certify this case as a class action under Fed. R. Civ. P. 23(b)(2);

49. Issue a declaratory judgment, declaring that the Defendant has violated the Plaintiffs' right to receive necessary mental health care, guaranteed under the Fifth Amendment, 6 U.S.C. § 279, and the Stipulated Settlement Agreement in Flores v Meese.

50. Issue an injunction requiring the Defendant to ensure that all members of the Plaintiff class receive professional, effective mental health screenings,

COMPLAINT – Page 11

Columbia Legal Services
Institutions Project
101 Yesler Way, Suite 301
Seattle, WA 98104
(206) 464-0838

including assessments for suicide risk, as well as necessary mental health interventions and treatment;

51. Award Plaintiffs all reasonable costs and attorney fees incurred in connection with this lawsuit, pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412(d), or any other applicable law; and

52 Grant Plaintiffs any other relief the Court deems appropriate and just.

Respectfully submitted this 21st day of October, 2003.

COLUMBIA LEGAL SERVICES
101 Yesler Way, Suite 301
Seattle, WA    98104
(206) 464-0838

_____
HANK L. BALSON, WSBA #29250
ATIENO ODHIAMBO, WSBA #30280
PATRICIA J. ARTHUR, WSBA #13769
Attorneys for Plaintiffs

COMPLAINT – Page 12

Columbia Legal Services
Institutions Project
101 Yesler Way, Suite 301
Seattle, WA 98104
(206) 464-0838

## CERTIFICATE OF SERVICE

I, ATIENO ODHIAMBO, certify under penalty of perjury under the laws of the State of Washington that a copy of the foregoing Complaint was served upon Defendant, via Federal Express, properly addressed and prepaid, this 21st day of October, 2003 to:

> Nguyen Van Hanh, Ph.D., Director
> Office of Refugee Resettlement
> Administration for Children & Families
> 370 L'Enfant Promenade, SW
> 6th Floor/East
> Washington, DC 20447

Signed this 21st day of October 2003 at Spokane, Washington.

_____
Atieno Odhiambo

COLUMBIA LEGAL SERVICES
1704 WEST BROADWAY
SPOKANE, WA 99201
TELEPHONE (509) 324-2789
FAX (509) 324-2755